UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NGM INSURANCE COMPANY, | : | |
| Plaintiff | : | NO.: 1:09-CV-01717 |
| | : | |
| v. | : | (JUDGE KANE) |
| | : | (MAGISTRATE JUDGE PRINCE) |
| STOLTZFUS CONSTRUCTION, LLC, | : | |
| FULLERTON LANDSCAPES, LLC, | : | |
| and FARM FAMILY CASUALTY | : | |
| INSURANCE COMPANY, | : | |
| Defendants | : | |

## REPORT AND RECOMMENDATION

Pursuant to an Order entered on November 10, 2010 (Doc. 28), Honorable Chief Judge Yvette Kane referred the pending motions for summary judgment (Docs. 23, 25) to the undersigned Magistrate Judge for the purpose of preparing a Report and Recommendation.

**I. Background**

In this case, plaintiff NGM Insurance Company seeks a declaratory judgment that it is not obligated to defend or indemnify defendant Stoltzfus Construction, LLC in an underlying action in which Stoltzfus Construction is being sued for damages that one Westview Properties suffered in connection with work that Stoltzfus Construction undertook on a barn structure that Westview owned.

*(A) Facts of the case*

The parties are all companies from different states: NGM is a Florida company with its principal place of business in Florida; Stoltzfus Construction is a Pennsylvania

company with its principal place of business in Pennsylvania; Fullerton Landscapes, LLC is a New Jersey company with its principal place of business in New Jersey; and Farm Family Casualty Insurance Company is a New York company with its principal place of business in New York. (Doc. 1, ¶¶ 1-4; Doc. 10, ¶ 1–4.)

For present purposes, the story begins with a request from one Tico Lin, owner of Westview Properties, to Douglas Fullerton, owner of Fullerton Landscapes, seeking help in developing a property on Route 565 in Augusta, New Jersey. (Lin Dep. 10:18–24, July 19, 2010, Doc. 24-5, at 5; *see also* Fullerton Dep. 11:2–12:8, July 19, 2010, Doc. 24-4, at 5 (explaining what Lin wanted to do with his property and overviewing their relationship in this context).) There was a barn on the property that Lin wanted to move, and so Fullerton recommended that Lin get in touch with Ivan Stoltzfus, owner of Stoltzfus Construction. (Fullerton Dep. 14:2–23, Doc. 24-4, at 6.)

Subsequently, Stoltzfus Construction submitted a proposal dated January 10, 2007 to Fullerton Landscapes, which addressed the movement of the barn that Lin sought. (Stoltzfus Construction, LLC Proposal, Jan. 10, 2007, Doc. 24-6, at 2–3 (comprising most of the proposal, which was a two-page document originally printed on both sides of a single sheet; the top of the second page is missing).) Stoltzfus testified that his signature appears on the first page of the proposal. (Stoltzfus Dep. 47:14–24, July 12, 2010, Doc. 24-7, at 14.) Lin testified that the signature on the second page is his. (Lin Dep. 18:15–19:13, Doc. 24-5, at 7.) The proposal contained a clause on the second page that read:

> All other trades and/or persons working on, under, and around structure after it has been moved onto foundation and/or raised to accommodate the construction of new foundation walls MUST have or be covered with workers compensation insurance and liability insurance of min. $500,000.00 with STOLTZFUS CONSTRUCTION LLC as additional insured. we will not be responsable for any damages caused to structures by other trades / persons

(Doc. 24-6, at 3.) Stoltzfus included this language because he was concerned about injuries to masons and other workers on the site and about damage to equipment.

2

(Stoltzfus Dep. 65:4–67:6, Doc. 24-7, at 19.)

The parties evinced some uncertainty about who was actually bound by the proposal. Stoltzfus testified that the contract was between Stoltzfus Construction and Fullerton Landscapes. (Stoltzfus Dep. 42:10–17, Doc. 26-3, at 13.) Lin testified that the contract was between himself (or Westview) and Stoltzfus (or Stoltzfus Construction). (Lin Dep. 17:9–12, Doc. 26-5, at 6.) Fullerton testified that Stoltzfus's proposal was actually accepted by Westview, and that he understood the resulting contract to be between Stoltzfus Construction and Westview. (Fullerton Dep. 29:8–23, Doc. 26-6, at 9.)

In any case, Stoltzfus Construction began work; the company was charged with moving the roof from the barn across the highway and jacking the roof up on top of a new foundation so that new walls could be built. Stoltzfus successfully moved the barn roof from its former location to a staging location elsewhere on Westview's property. (Stoltzfus Dep. 75:5–76:11, 80:22–25, 81:14–25, Doc. 24-7, at 21–2; Doc. 26, ¶ 2; Doc. 29, ¶ 2.) On May 3, 2007, while Stoltzfus Construction was lifting the barn roof over the new foundation using jacks that Stoltzfus Construction owned, the roof collapsed and was destroyed. (Stoltzfus Dep. 58:2–9, Doc. 24-7, at 17 (ownership of the jack); Doc. 24-10 (photos of the collapsed roof); Doc. 26, ¶ 3; Doc. 29, ¶ 3.) During the jacking operation that resulted in the roof's collapse, the work was being done entirely by Stoltzfus Construction; no subcontractors were on the job. (Stoltzfus Dep. 137:7–15, Doc. 24-7, at 36; Doc. 26, ¶ 4; Doc. 29, ¶ 4.) As a result of the collapse, Fullerton Landscapes, through its insurer Farm Family, paid Westview $170,500 for the damage to the barn roof. (Doc. 26, ¶ 6; Doc. 29, ¶ 6.)

At the time of the collapse, Stoltzfus Construction was insured by NGM under policy number MPV33863. (Doc. 26, ¶ 5; Doc. 29, ¶ 5.) An ACORD Certificate of Liability Insurance (Doc. 24-8, at 2) dated February 15, 2007, and issued by Farm Family, indicated that "Stoltzius [sic] Construction, LLC" was listed as an additional insured

3

under Fullerton Landscapes' insurance policy with Farm Family; however, the Farm Family policy for Fullerton Landscapes (Doc. 24-9) dated February 22, 2007, did not include an endorsement showing that Stoltzfus Construction was an additional insured. Moreover, the February 15 ACORD certificate stated, "This certificate is issued as a matter of information only and confers no rights on the certificate holder." (Doc. 24-8, at 2.) Douglas Fullerton testified that he never took the clause in the Stoltzfus proposal about Stoltzfus Construction becoming an additional insured to mean "additionally insured by anyone [he] knew." (Fullerton Dep. 21:8–13, Doc. 24-4, at 7.)

*(B) Procedural history*

This case began with NGM filing a complaint on September 3, 2009. (Doc. 1.) On January 29, 2010, Farm Family and Fullerton Landscapes filed identical answers, crossclaims against Stoltzfus Construction, and counterclaims against NGM. (Docs. 10, 11.)[1] NGM answered the counterclaims on February 3, 2010. (Docs. 14, 15.)

Following completion of discovery, Fullerton Landscapes and Farm Family filed a joint motion for summary judgment against NGM on November 8, 2010 (Doc. 23), along with a brief in support (Doc. 24); the motion included a statement of facts. NGM never responded to Fullerton's statement of facts. However, NGM filed its own motion for summary judgment (Doc. 25), also on November 8, along with its own statement of facts (Doc. 26) and a brief in support (Doc. 27). Somewhat belatedly, on November 24, Fullerton Landscapes and Farm Family filed a brief in opposition to NGM's motion (Doc. 29) as well as a response to the statement of facts (Doc. 30); NGM filed its own brief in opposition (Doc. 31) on the same day. The motions are now ripe for adjudication.

---

[1]Stoltzfus Construction never answered or otherwise responded to the complaint. Accordingly, the term "defendants" as used throughout this Report and Recommendation refer to Fullerton Landscapes and Farm Family but not Stoltzfus Construction.

4

**II. Standard of Review**

Federal Rule of Civil Procedure 56(c) requires the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. *Anderson*, 477 U.S. at 248; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am.*, 927 F.2d 1283, 1287–88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. *Moore v. Tartler*, 986 F.2d 682 (3d Cir. 1993); *Clement v. Consol. Rail Corp.*, 963 F.2d 599, 600 (3d Cir. 1992); *White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988). In order to avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary judgment satisfies its burden under Rule 56(c) of identifying evidence that demonstrates the absence of a genuine issue of material fact, the nonmoving party is required by Rule 56(e) to go beyond the pleadings with affidavits, depositions, answers to interrogatories, or the like in order to demonstrate specific material facts that give rise to a genuine issue.

5

*Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). When Rule 56(e) shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case that it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323; *see Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992).

**III. Discussion**

This case presents two issues on summary judgment: (1) whether Stoltzfus Construction was an additional insured under Fullerton Landscapes' insurance policy with Farm Family, and (2) whether any of three exclusions in Stoltzfus Construction's policy with NGM operate as a bar to coverage.

*(A) Whether Stoltzfus Construction was an additional insured*

If Stoltzfus Construction was an additional insured under Fullerton Landscapes' policy with Farm Family, the conditions of Stoltzfus Construction's policy with NGM would relieve NGM of its duty to pay for damage to the barn roof as a primary insurer. (See Businessowners Common Policy Conditions Part H(1), Doc. 24-3, at 72 ("If there is other insurance covering the same loss or damage, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance . . . .").) Naturally, plaintiff claims that the condition applies and defendants insist that it does not, although the matter is only raised in the briefs related to defendants' motion for summary judgment..

6

Defendants argue that Fullerton Landscapes never had any contractual agreement with Stoltzfus Construction and emphasize that although Farm Family issued an ACORD certificate listing "Stoltzius Construction LLC" as an additional insured, Stoltzfus Construction was not actually indicated as an additional insured in the endorsements in Fullerton Landscapes' insurance policy issued just a week later.

Although defendants concede that the Stoltzfus Construction proposal (Doc. 24-6) was originally made by Stoltzfus Construction to Fullerton Landscapes, they note that testimony shows that the proposal bears signatures only of Ivan Stoltzfus and Tico Lin, representatives of Stoltzfus Construction and Westview—the implication being that absent a contract between Stoltzfus Construction and Fullerton Landscapes, there would have been no reason for Fullerton Landscapes to list Stoltzfus Construction as an additional insured. It is clear enough that the proposal is unsigned by Douglas Fullerton or any other representative of Fullerton Landscapes, and there is no evidence before the Court of any contract between Stoltzfus Construction and Fullerton Landscapes regarding the barn-roof-moving project or anything else.

The ACORD certificate listing "Stoltzius Construction, LLC" (Doc. 24-8, at 2) as an additional insured under Fullerton Landscapes' policy is the strongest evidence to suggest that Stoltzfus Construction was, in fact, an additional insured—at least at first glance. However, any weight that the certificate might have as evidence in this regard is entirely negated by the statement on the certificate reading: "This certificate is issued as a matter of information only and confers no rights upon the certificate holder." (*Id.*) It is hard to imagine how the certificate could more clearly state that it is not, by itself, proof of Stoltzfus Construction's coverage under Fullerton Landscapes' policy. The Farm Family insurance policy for Fullerton Landscapes, issued just a week later, lends further strength to a claim of Stoltzfus Construction's noncoverage under this policy: although

there are six endorsements in the policy listing six different entities as additional insureds (Doc. 24-9, at 4–9), Stoltzfus Construction is not named.

In opposition to defendants, plaintiff attempts to portray defendants as "relying solely upon the deposition testimony of Fullerton in support of their motion for summary judgment on this issue" (Doc. 31, at 17), and stresses the lack of testimony from any insurance agents involved in issuing the ACORD certificate. Plaintiff then makes much of *Borough of Nanty-Glo v. Am. Surety Co.*, 163 A. 523 (Pa. 1932), cited for the proposition that oral testimony cannot be used as the basis for the entry of summary judgment because the jury must be allowed to judge the credibility of the testimony. Unfortunately for plaintiff, reliance on *Nanty-Glo* is misplaced.

*Nanty-Glo* was not a case that concerned entry of summary judgment before a trial; it addressed whether a court could enter a directed verdict after the presentation of testimony at trial, making it procedurally incongruous. *Id.* at 524. Further, *Nanty-Glo* adjudicated procedural matters in a case that predated both *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), and the Federal Rules of Civil Procedure; in federal court, the Federal Rules control procedural matters as well as the applicable standard for summary judgment. *See, e.g.*, *Tarlecki v. Mercy Fitzgerald Hosp.*, No. 01-1347, 2002 WL 1565568, at *1 n.1 (E.D. Pa. July 15, 2002) (declining to follow *Nanty-Glo* and noting that Fed. R. Civ. P. 56 governs summary judgment). *See also* Fed. R. Civ. P. 56(c)(1)(A) (inviting parties to support their positions on summary judgment with, *inter alia*, citations to depositions).

Plaintiff's counterargument hinges on *Nanty-Glo*, and crumbles along with the relevance of *Nanty-Glo* as useful precedent. The notion that testimony from Fullerton, Lin, and Stoltzfus should be disregarded, and that the lack of testimony from an insurance agent should yet be considered significant, is unfounded and unhelpful here. Plaintiff has not presented or discussed any argument or law that would effectively undermine the

compelling evidence represented by the omission of Stoltzfus Construction in the list of endorsements in Fullerton Landscapes' insurance policy.

It is therefore recommended that the court find that Stoltzfus Construction was not covered as an additional insured under Fullerton Landscapes' insurance policy with Farm Family, and that summary judgment be granted for defendants on this issue.

*(B) Whether coverage for the barn-roof collapse is excluded from the NGM policy*

Pennsylvania law commits to a judge the task of interpreting an insurance contract. *12th Street Gym, Inc. v. Gen. Star Indem. Co.*, 93 F.3d 1158, 1165 (3d Cir. 1996) (citing *Std. Venetian Blind Co. v. Am. Empire Ins. Co.*, 469 A.2d 563, 566 (Pa. 1983)). If the language of an insurance policy is "clear and unambiguous, it must be given its plain and ordinary meaning." *Id.* (citing *Visiting Nurse Ass'n v. St. Paul Fire & Marine Ins.*, 65 F.3d 1097, 1100 (3d Cir. 1995)).

An insurance company must defend an insured "whenever the complaint filed by the injured party may *potentially* come within the policy's coverage." *Pacific Indem. Co. v. Linn*, 766 F.2d 754 (3d Cir. 1985) (citing, *e.g.*, *Gedeon v. State Farm Mut. Auto. Ins. Co.*, 188 A.2d 320, 321–22 (Pa. 1963); *Cadwallader v. New Amsterdam Cas. Co.*, 152 A.2d 484 (1959)). The insurer retains the duty to defend "until the insurer can confine the claim to a recovery that is not within the scope of the policy." *Id.* (citing *Cadwallader*, 152 A.2d at 484; *Seaboard Indus., Inc. v. Monaco*, 392 A.2d 738 (Pa. Super. 1978)). Exclusions in an insurance policy "will be effective against an insured if they are clearly worded and conspicuously displayed." *Id.* (citing *Std. Venetian Blind Co. v. Am. Empire Ins. Co.*, 469 A.2d 563, 567 (1983)).

The insured bears the burden of establishing coverage under an insurance policy. *Nationwide Mut. Ins. Co. v. Cosenza*, 258 F.3d 197, 207 (3d Cir. 2001) (citing *Erie Ins. Exch. v. Transam. Ins. Co.*, 533 A.2d 1363, 1366–67 (Pa. 1987)). However, it falls to the

9

insurer to establish the applicability of an exclusion in the insurance policy. *Id.* (citing *Am. States Ins. Co. v. Md. Cas. Co.*, 628 A.2d 880, 887 (Pa. Super. 1993). Exclusions "are always strictly construed against the insurer and in favor of the insured." *Id.* (citing *Selko v. Home Ins. Co.*, 139 F.3d 146, 152 n.3 (3d Cir. 1998)).

In this case, because plaintiff NGM has admitted for the purposes of summary judgment that the collapse of the barn roof constituted an "occurrence" triggering coverage (Doc. 31, at 9), defendant Stoltzfus Construction would be covered under its insurance policy with plaintiff NGM for the events relevant to this case unless an exclusion to the policy applies.

Plaintiff argues that all, some, or one of the following three exclusions to the policy apply:

> **k.   Damage to Property**
> "Property damage" to:
> **(4)**   Personal property in the care, custody, or control of the insured;
> **(5)**   That particular part of real property on which you . . . [are] performing operations, if the "property damage" arises out of those operations; and
> **(6)**   That particular part of any property that must be restored, repaired, or replaced because "your work" was incorrectly performed on it.

(Doc. 24-3, at 62.) "Property damage" is defined in relevant part as "physical injury to tangible property, including all resulting loss of use of that property." (*Id.* at 69.) There is no dispute that the collapse of the barn roof constitutes "property damage."

(1) Exclusion k(4), personal property

Under exclusion k(4), damage to personal property in the "care, custody, or control" of the insured is not covered by the insurance policy. Of course, this exclusion does not operate if the property in question is real property. Since the property in question

10

is a barn roof, which at the time of collapse was detached from its original structure and not permanently affixed to a foundation or any other structure, an argument for the applicability of exclusion k(4) would need to be predicated on the appearance of some uncertainty over whether the barn roof is personal or real property.

However, especially in light of a court's need to strictly construe exclusions to insurance policies against the insurer, exclusion k(4)'s definition of "personal property" should not be viewed so broadly as to include a barn roof. As plaintiff notes, the roof would have been considered real property at the time it was intact and attached to the substructure and foundation at its original location. (Doc. 27, at 13.) Mere movement of real property does not change its nature; for example, were a house jacked up and moved, it would not cease to be real property during its transport, then become real property again once it had become stationary. Exclusion k(4) does not apply to the facts of this case.

(2) Exclusion k(5), real property

Exclusion k(5) precludes coverage of damage to "that particular part" of real property on which an insured is performing operations if the property damage arises from those operations. In support of its argument for applicability of this exclusion, plaintiff cites a variety of cases, none of which is from the Middle District of Pennsylvania or the Third Circuit. The most analogous and instructive of these cases is *Grinnell Mut. Reins. Co. v. Lynne*, 686 N.W.2d 118 (N.D. 2004), which addressed the applicability of an insurance-policy exclusion worded identically to the present exclusion k(5).

In *Grinnell*, one Ole Lynne had been hired as a contractor to construct a new foundation for a farm house. *Id.* at 121. Lynne placed the house on timbers for support while he demolished the old foundation and constructed a new one. *Id.* At some point in the process, either he or his subcontractor realized that the house would have to be raised another eight inches in order to accommodate the basement walls. *Id.* While Lynne was in

11

the process of raising the house, the timbers "rolled over," causing the house to fall off the support jacks and into the basement approximately three feet. *Id.*

Lynne's insurer, Grinnell, argued for the applicability of an exclusion that stated, "[t]his insurance does not apply to: [t]hat particular part of real property on which you . . . are performing operations, if the 'property damage' arises out of those operations." *Id.* at 123 (quoting Grinnell Insurance Policy § 2(j)(5)) (alterations in original). At the conclusion of a detailed and lucid analysis, the North Dakota Supreme Court noted that "[t]hat particular part of real property" on which Lynne was working was the house, and agreed with the trial court that at the time of the loss, reasonable persons could not disagree that (1) Lynne was performing operations; (2) on real property; and (3) damage to the property arose out of those operations. *Id.* at 126. The court accordingly held that based on the applicability of exclusion 2(j)(5), Lynne's policy did not cover the damage to the house.

Defendants exhort against applying a similar line of reasoning to the case at bar on the basis that at the time of the loss, Stoltzfus Construction was actually performing operations on the wood cribbing and related equipment, not the barn itself. (Doc. 29, at 17.) This hair-splitting distinction can carry no more weight in the present case than it would have in *Grinnell*: in *Grinnell*, Lynne was working on raising the house rather than working on the house itself, just as in this case, Stoltzfus Construction was working on raising the barn roof rather than working on the barn roof itself. If defendants' argument on this point were successful, it would defeat application of exclusions like k(5) any time damaged real property was not, at the time of loss, being physically and directly worked on. The property damage in this case arose out of Stoltzfus Construction's roof-raising operations no less than if beams in the roof were actually being replaced. That work was being done not on the roof itself but rather on the supports for the roof does not affect the direct relationship between Stoltzfus Construction's operations and the roof's collapse.

12

Defendants also argue that exclusion k(5) does not apply because Stoltzfus Construction was not the contractor that constructed the foundation over which the barn roof had been placed. This fact is not in dispute, but it does not affect the outcome here for two reasons. First, defendants mentioned this fact in the process of distinguishing two cases that plaintiff cited; these two cases do not control the outcome. Second, which party constructed the foundation has no bearing on the undisputed fact that it was Stoltzfus Construction alone that was working on the site when the barn roof collapsed.

The *Grinnell* court's analysis is persuasive and fully applicable here. As in *Grinnell*, there can be no reasonable dispute that (1) Stoltzfus Construction was performing operations, (2) on real property, of which the barn roof was a part, and (3) damage to the property arose because of those operations. Exclusion k(5) thus operates as a bar to coverage of the damage to the barn roof.

(3) Exclusion k(6): property that must be restored, repaired, or replaced

Exclusion k(6) bars coverage of costs related to "[t]hat particular part of any property that must be restored, repaired, or replaced because 'your work' was incorrectly performed on it." (Doc. 24-3, at 62.) The insurance policy defines "your work" as "[w]ork or operations performed by you or on your behalf" and "[m]aterials, parts or equipment furnished in connection with such work or operations." (*Id.* at 70.)

Plaintiff refers in conclusory fashion to *Grinnell*, noting that in that case, the equivalent exception to the insurance policy then at issue was held to apply. Similarly, plaintiff argues, exclusion k(6) should apply here.

Defendants counterargue as follows:

Ivan Stoltzfus testified that the cribbing structures collapsed before the barn structure fell. Therefore, the above exclusion does not apply to preclude coverage for the damage to the barn as the initial damage occurred to Stoltzfus's

13

> *cribbing*, which would fall under the "your work" exclusion as "materials, parts or equipment furnished in connection with such work or operations."

(Doc. 29, at 17 (citation omitted).) As an initial matter, Stoltzfus's testimony about the cribbing structures was never mentioned in defendants' statement of facts or response to plaintiff's statement of facts. This point was raised for the first time in defendants' brief opposing plaintiff's motion for summary judgment. Since a brief opposing summary judgment is not the appropriate place to raise a factual matter for the first time, this factual claim will be disregarded. *See* Local Rule 56.1 ("The papers opposing a motion for summary judgment shall include a *separate* . . . statement of the material facts . . . ." (emphasis added)). In any case, even were the matter of the cribbing's collapse not disregarded, defendants' argument in the above passage actually seems to suggest that exclusion k(6) should apply. In that passage, despite urging that exclusion k(6) does not apply, defendants explicitly state that the cribbing falls under the definition of "your work" in the insurance policy; and there can be no reasonable dispute that this cribbing constituted "materials . . . furnished in connection with" Stoltzfus Construction's work in raising the barn roof. Neither can there be any reasonable dispute that, if the cribbing did collapse, the collapse was because of work performed incorrectly. If the collapse of the cribbing that supported the roof preceded the collapse of the barn roof itself, the causal connection is plain. Defendants' argument in the above passage fails because the mere fact that "the initial damage occurred to Stoltzfus's *cribbing*" as opposed to the roof itself does not affect the causal connection between the damage to the one and the other, and initial damage to the cribbing is actually consistent with finding exclusion k(6) applicable.

There is no dispute in the record before the Court that (1) the barn roof was damaged so as to need restoration, repair, or replacement and (2) the damage was the result of work incorrectly performed by Stoltzfus Construction. Exclusion k(6) therefore applies, and provides a bar to coverage independently of the also-applicable exclusion

14

k(5)—because, as defendants themselves point out, "[f]inding coverage for the cost of replacing or repairing defective work would transform the policy into something akin to a performance bond." (Doc. 29, at 18 (quoting *Ohio Cas. Ins. Co. v. Bazzi Constr. Co.*, 815 F.2d 1146, 1148–49 (7th Cir. 1987)).)

**IV. Conclusion**

Based on the foregoing discussion, it is recommended that plaintiff's motion for summary judgment be GRANTED; that defendants' motion for summary judgment be DENIED; and that the Court find that Stoltzfus Construction, LLC was not an additional insured under Fullerton Landscapes, LLC's insurance policy with Farm Family Casualty Insurance Company.

s/ William T. Prince
William T. Prince
United States Magistrate Judge

January 10, 2011